**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LEROY M. SMITH,

      Plaintiff-Appellant,

  v.

JOHN E. POTTER, Postmaster
General, United States Postal
Service,

      Defendant-Appellee.

No. 07-3031
(D.C. No. 05-CV-2149-JWL)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge and
**TYMKOVICH**, Circuit Judge.

---

      Plaintiff Leroy M. Smith appeals pro se from the district court's orders

granting summary judgment in favor of his former employer, the United States

Postal Service (USPS). Through appointed counsel in the district court, he

brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§§ 2000e to 2000e-17, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 to 634, alleging race and age discrimination, harassment, retaliation, a racially-hostile work environment, and constructive discharge. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

Mr. Smith was employed by the USPS at the Bulk Mail Center in Kansas City, Kansas from 1992 until August 6, 2004, when he went on disability retirement. He claims that his job difficulties began after he testified against the USPS at a union-grievance hearing in August 2001, concerning the request of two postal employees for light-duty assignments during the time they were on crutches. In October 2002, Mr. Smith filed an Equal Employment Opportunity (EEO) complaint alleging that his supervisors discriminated against him and harassed him on the basis of his race (African American) in retaliation for testifying at the union-grievance hearing. The EEO complaint was terminated in December 2002, and Mr. Smith did not file a federal lawsuit based on those claims.

Mr. Smith alleges that his supervisors continued to intimidate and harass him. He asserts that younger, female, and Caucasian employees were assigned better and easier jobs than he, despite his more senior status, and that new supervisors also harassed him based on what his former supervisors told them. Mr. Smith further asserts that less senior employees were assigned work that

should have been assigned to him. In addition, he claims that his supervisor put his finger in his face and yelled at him and that a different supervisor insisted that he do a hazardous job for which he was not qualified, and then yelled and threatened to discipline him for refusing to do it.

In October 2002, Mr. Smith was absent from his work area without permission on two occasions, so his supervisor issued him a Letter of Warning. He filed a second EEO complaint in January 2003, claiming that his supervisors discriminated against him on the basis of race (African American), age (over 40), and in retaliation for testifying at the union-grievance hearing when they issued the Letter of Warning.[1] After his second EEO complaint was terminated, Mr. Smith filed a timely lawsuit in federal district court.

The district court dismissed some of Mr. Smith's claims for failure to exhaust administrative remedies and determined that he had exhausted his administrative remedies on his claims based the October 2002 Letter of Warning. On the merits, the court held that Mr. Smith had not adduced enough evidence to survive summary judgment.

On appeal, Mr. Smith challenges the district court's summary-judgment orders. He also argues that his court-appointed attorney made errors that affected

---

[1] On November 5, 2002, within 45 days of the Letter of Warning, Mr. Smith requested pre-complaint counseling, as required by 29 C.F.R. § 1614.105(a).

the outcome and that he was denied his right to a jury trial. In addition, he claims that postal employees harassed him by interfering with the delivery of his mail.

## II. Analysis

We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### A. Exhaustion of Administrative Remedies

Before we address the merits of Mr. Smith's claims, we must determine the scope of our jurisdiction. Federal courts do not have subject-matter jurisdiction to review Title VII and ADEA claims not exhausted administratively. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). "[E]ach discrete [retaliatory or discriminatory action] constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quotation omitted).

Of the discrete discriminatory or retaliatory acts Mr. Smith identified, one had been the subject of the first EEO complaint, so the court had no jurisdiction over it because Mr. Smith had failed to file suit within 90 days after the EEO proceedings were concluded. *See* 42 U.S.C. § 2000e-5(f)(1) (providing civil

action may be brought within 90 days of notice of conclusion of EEO complaint). Two more claims had not been raised in any EEO complaint, so they were unexhausted and the court likewise lacked jurisdiction. *See Shikles*, 426 F.3d at 1317 (holding exhaustion of administrative remedies "is a jurisdictional prerequisite to suit under Title VII" and ADEA). Issuance of the Letter of Warning was the only discrete act for which Mr. Smith exhausted his administrative remedies. Accordingly, we review the claims based on it.

## B. Race Discrimination

A plaintiff asserting a claim that he was terminated on the basis of race must first establish a prima facie case by demonstrating that (1) "he was a member of a protected class," (2) he was performing his job satisfactorily, and (3) "he was terminated under circumstances giving rise to an inference of discrimination." *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). If he does so, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the termination that is not facially prohibited by Title VII." *Id.* (quotation omitted). Once the defendant provides such a reason, the burden shifts back to the plaintiff to demonstrate that the reason is a "pretext for racial discrimination." *Id.*

The parties dispute only the final step—whether issuance of the Letter of Warning was a pretext for racial discrimination. Mr. Smith contends that he

demonstrated pretext by showing that similarly-situated Caucasian coworkers were treated more favorably than he.

> Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. In determining whether two employees are similarly situated, a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees. Moreover, even employees who are similarly situated must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant.

*McGowan*, 472 F.3d at 745 (citations and quotations omitted).

Mr. Smith's evidence does not demonstrate that the Caucasian employees were situated similarly to him. He did not show that the Caucasian employees violated the same work rule against leaving the work area without permission, that the Caucasian employees' supervisors knew that they had left their work areas, or that the Caucasian employees had the same supervisor as he. In addition, Mr. Smith's only evidence of racial animus was his statement that he had heard from unidentified supervisors and African American employees that one of his supervisors treated African Americans more harshly than Caucasians. R. Doc. 84, Attach. G, Ex. 6, at 265. This brief, general reference to a rumor is insufficient to withstand summary judgment. *See Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 558 (10th Cir. 2001) ("To withstand summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." (quotations omitted)). Moreover, the hearsay statements

-6-

by coworkers are inadmissable hearsay that cannot be considered on summary judgment. *Young v. Dillon Cos.*, 468 F.3d 1243, 1252 (10th Cir. 2006). Consequently, we conclude that the district court properly granted summary judgment to the USPS on this claim.

## *C. Retaliation*

Title VII's anti-retaliation provision "forbids an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405, 2408 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  Mr. Smith's retaliation claim was based on his testimony at the August 2001 union-grievance hearing regarding whether two employees should be given light-duty assignments while they were on crutches.[2]

The union-grievance hearing was not protected opposition to discrimination and therefore not protected by Title VII. *Cf. Jones v. U.P.S., Inc.*, ___ F.3d ___, 2007 WL 2677141, at *14 (10th Cir. Sept. 13, 2007) ("Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against the employee *because* of the protected conduct, as required by statute."). Accordingly, summary judgment was correct on the retaliation claim because it was not based on protected conduct.

_____

[2]     Mr. Smith did not allege retaliation based on his first EEO complaint.

### D. Racial Harassment and Hostile Environment

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and quotations omitted). Mr. Smith testified at his deposition that he did not recall any of his supervisors making a racially derogatory or inappropriate statement. R. Doc. 84, Attach. G, Ex. 6, at 407-08.[3] As discussed above, Mr. Smith relies on a rumor that one supervisor treated African Americans more harshly than Caucasians, but an unsubstantiated rumor is insufficient to resist summary judgment. To the extent Mr. Smith seeks to demonstrate a racially hostile environment based on allegations that he was treated less favorably than Caucasian employees, we again hold that he has failed to show that he was situated similarly to them. We uphold the summary judgment on this claim, as well.

### E. Constructive Discharge

"A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the

---

[3]  In his affidavit opposing summary judgment, Mr. Smith claimed that in August 2004, his supervisor called him "boy," a remark that can be racially derogatory. But this incident was not included in the EEO complaint; accordingly, this court does not have jurisdiction to consider it. *See Shikles*, 426 F.3d at 1317.

employee's position would feel forced to resign." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). The court employs an objective standard to determine "the voluntariness of an employee's resignation." *Id.*

Mr. Smith did not allege that the Letter of Warning made his working conditions intolerable and forced him to resign. Indeed, he continued at his job for almost two more years. In addition, as discussed above, he had virtually no evidence of racial harassment. *See id.* at 1136 n.8 (rejecting plaintiff's constructive discharge claim and noting that plaintiff had not "demonstrated any particular instances of racial harassment or any circumstances demonstrating racial hostility"). Therefore, summary judgment in favor of the USPS was appropriate on this claim.

## *F. Age Discrimination*

The ADEA prohibits discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), for those who are aged 40 or older, *id.* § 631(a). A prima facie case of age discrimination "requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion," such as age. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (quotation and emphasis omitted). For a prima facie case of age discrimination, a plaintiff must show: (1) he belongs to a class protected by the ADEA, (2) he was qualified for his position, (3) he "suffered an adverse employment action," and (4) he was "treated less favorably than others," usually

that he was replaced by a younger person. *Exum*, 389 F.3d at 1134; *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005).

Mr. Smith failed to show that the Letter of Warning was an "adverse employment action" given that he worked for almost two years after he received it, and he was never demoted, suspended, or terminated as the result of it. Moreover, although Mr. Smith alleged that the Letter of Warning caused him to be scrutinized more closely and bypassed for favorable job assignments, he has presented no evidence to support those claims. Summary judgment was therefore appropriate on the age-discrimination claim.

*G. Ineffective Assistance of Counsel, Jury Trial, Interference with Mail*

For the first time on appeal, Mr. Smith asserts that his court-appointed attorney provided ineffective assistance and that he was denied his right to a jury trial. He also now claims that the USPS interfered with his mail delivery. We decline to consider these claims because they were not presented to the district court. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1280 (10th Cir. 2003) ("An issue is waived if it was not raised below in the district court.").

### III. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge